No. 4619.

STATE OF LOUISIANA *v.* CHARLES CLINTON, Auditor, and A. DUBUCLET, Treasurer.   G. A. SHERIDAN, intervenor.

The objection to the validity of the bonds issued under act 32, approved February 25, 1870, to pay for work on the levees of the State, has no force.   Said act is not in conflict with articles 110 and 118 of the constitution of the United States.

The payment by the State in the form of bonds, for work on the levees of the State, is not taking private property, or divesting vested rights in the meaning of the constitution, State or federal.   The question as to whether a tax shall be levied on all the taxable property of the State, or only on the particular localities where the work is done, is a question of policy to be determined by the Legislature and not by the courts, there being no constitutional regulation on the subject.

Whether the original proprietors were bound or not to keep up the levees, does not affect the power or right of the State to do so, and, in this proceeding, the court can not pass on the question of consideration if it be a matter for judicial inquiry.

Whether these were the necessary parties to institute a suit or not in this instance *before* the intervention of Sheridan, the holder of some of the bonds in question, it is quite sure that, *after* he intervened, to the extent of his interest in the bonds, there was a plaintiff in injunction, the State; and a defendant, Sheridan; and there was thus a joinder of issue.

The act, No. 32, called in question, was approved on the twenty-fifth of February, 1870, about two months before the adoption of the constitutional amendment referred to.   It is impossible therefore to imagine how that law can be affected by said amendment.

The construction of levees can not be called a *local* work in Louisiana, but even should such a work be local in its character, there is no prohibition against the General Assembly authorizing local improvements to be made and providing for the payment thereof.

Taxes should only be levied for those purposes which properly constitute a public burden.   But what is for the public good, and what are public purposes and what does constitute a public burden, are questions which the Legislature must decide upon its own judgment, and in respect to which it is vested with a large discretion, which can not be controlled by the courts, except perhaps when its action is clearly evasive, and where, under pretense of a lawful authority, it has assumed to exercise one that is unlawful.

If the theory of the plaintiff be correct, that the appropriations for levees and railroads are for private purposes and not legitimately the subjects for legislation, and therefore, that the debts created for such purposes are unconstitutional—*a fortiori* would bonds, issued in aid of the property banks of this State be void—and thus, all the bonded debt of the State, created during the last forty years, would be null and void.   Courts, whose duty it is to deal with facts and laws, can not seriously be expected to adopt such vagaries.

No provision of the constitution has been cited, which forbade the State to contract the debt in question, and if there be none, as is believed to be the fact, the debt is valid.

APPEAL from the Superior District Court, parish of Orleans.   *Hawkins, J. A, P. Field,* Attorney General, *J. Q. A. Fellows, J. B. Cotton, J. S. Whitaker, L. Madison Day,* for plaintiff and appellant. *W. O. Denegre,* for the Auditor.   *Kennard, Howe & Prentiss,* for intervenor.

HOWELL, J.   This appeal presents the intervention of one G. A. Sheridan, as holder of certain "levee bonds," in the injunction suit of the State against the Auditor and Treasurer, a branch of which we have just decided.   The matter involved in this proceeding is the validity of the bonds issued under act 32, approved February 25, 1870, to pay for work on the levees of the State, the payment of the coupons attached thereto having been injoined by the State on the grounds:

36

*First*—That the Legislature had no power to create said obligation.

*Second*—That the proprietors of property fronting on the water courses of Louisiana subject to overflow, had contracted in the original purchase of the property to keep up the levees in front of their lands, and had purchased the same by reason of said condition at a much reduced price.

*Third*—That the property in the State not subject to overflow can not constitutionally be taxed for the protection of lands which are so subject, that is, the property of the whole State can not be taxed for the benefit of a part of the State.

*Fourth*—That there is no valid consideration for said bonds.

First and third. It is urged that the law 32 of 1870, authorizing the bonds, is in conflict with articles 110 and 118 of the constitution of the State and the fifth amendment of the constitution of the United States, which prohibit the divestiture of vested rights, or the taking of private property, except for public purposes and for just and adequate compensation, and require taxation to be equal and uniform, and therefore the Legislature was without authority to create the debt or impose the tax, as is done, for its extinguishment. We are unable to perceive the conflict. The payment by the State, in the form of bonds, for work on the levees of the State, is not taking private property or divesting vested rights, in the meaning of the constitution, State or federal. The State simply caused certain work or improvements of a public character to be done or made, which, in the opinion of the Legislature, was for the benefit of the State and some or all of its inhabitants, which the Legislature had the power and authority to do, as it is not prohibited by the constitution. The question as to whether a tax shall be levied on all the taxable property of the State, or only on the particular localities where the work is done, is a question of policy to be determined by the Legislature and not by the courts, there being no constitutional regulation on the subject.

The other grounds are equally untenable. Whether the original proprietors were bound or not to keep up the levees, does not affect the power or right of the State to do so. And in this proceeding we can not pass on the question of consideration if it be a matter for judicial inquiry.

Judgment affirmed.

---

## ON REHEARING.

LUDELING, C. J. This suit was instituted by the Attorney General against the Auditor and Treasurer of the State, to restrain them from paying the interest on certain bonds of the State, etc. The alleged

grounds for the injunction were: that the said bonds were illegal, unconstitutional, null and void; that they were issued in violation of the constitutional amendment limiting the State debt; that they had no legal consideration, and were issued to persons who had no legal claim against the State, to be paid out of the revenues derived from taxation.

In addition to the above objections it was urged that it was the duty of the front proprietors to keep up the levees, as they had acquired their lands burdened with that obligation, and that the State could not levy a tax on all the property of the State to keep up the levees, because that would be taking private property for the benefit of private individuals, and not for public purposes and without any consideration, which would be in violation of the constitution of the United States as well as of the State.

George S. Sheridan, the holder of some of the bonds, the payment of the accrued interest whereof was injoined, intervened in the suit, moving to have the injunction dissolved, on the grounds that the injunction was issued without any affidavit to the truth of the alleged reasons for the injunction; that the Attorney General, *ex proprio motu*, or by direction of the Governor, had no authority to bring this suit; that there is no party defendant to the original injunction, the State being both plaintiff and defendant; that the Attorney General can not cause to be injoined a State officer, in the executive or legislative department, to prevent him from doing an official act which the law commands him to do; and lastly, that all the alleged reasons to show the illegality of the bonds are not true.

Pretermitting the expression of an opinion as to the regularity of the proceedings by the Attorney General against the Auditor and Treasurer, who by law can not appear in court to defend themselves but must be represented by the Attorney General, and passing by the other serious questions raised in the motion to dissolve the injunction, we will consider the questions on the merits of this controversy, as that course will better subserve the ends of justice.

Whether these were the necessary parties to constitute a suit or not, before the intervention of Sheridan, it is quite sure that after he intervened, to the extent of his interest in the bonds, there was a plaintiff, the State; and a defendant, Sheridan; and that there was thus a joinder of issue. There was judgment dissolving the injunction and the State has appealed.

It is admitted that Sheridan holds a number of the bonds issued under act No. 32, approved February 25, 1870, entitled "An Act to provide means for work done or to be done, on the levees of the State, under contract with the Board of Public Works, by the issue of bonds

of the State to the amount of $3,000,000, and to provide for the re-
demption of said bonds." It is alleged in the petition that the amend-
ment of the constitution, limiting the State debt, was promulgated on
the fifteenth December, 1870. It is also alleged that the act No. 32,
called in question, was approved on the twenty-fifth of February, 1870,
about ten months before the adoption of the amendment. It is impos-
sible, therefore, to imagine how that law can be affected by the consti-
tutional amendment.

The other questions raised are, whether or not the building of the
levees of the State is a proper subject for legislation, and whether a
general tax can be levied by the Legislature to build and maintain the
levees of the State? The plaintiff insists that the General Assembly
can not undertake to build levees, because the front proprietors ac-
quired their title subject to the burdens of keeping up the levees. If
the statement were strictly accurate, we do not perceive the force of
the argument, for if, in the judgment of the General Assembly, the
public interests required that the levees should be built and main-
tained under a general system or otherwise by the State, we know of
no good reason, and none has been furnished in the briefs, why the
Legislature should not command it, and thus shift the burden from
the front proprietors. See Tardos v. Jefferson.

It is contended that the levees are local works for the benefit of
individuals in particular localities. A work which extends along the
banks of the Mississippi river, through the whole length of the State,
along the banks of Red river, Black river, the Atchafalaya and Teche,
and other streams in this State can not seriously be called local in
Louisiana. Sad experience has taught the people of Louisiana that
the building and maintenance of the levees is a work too gigantic for
even the State to successfully complete, and they are now addressing
their prayers to the general government to come to their relief. It is
an error to say that the levees benefit only the front proprietors, or
even only those whose lands are subject to inundation, for the pros-
perity of one part of the State affects beneficially all the parts thereof
by lessening the proportion of the burden of each. But if the work
had been local in its character we know of no prohibition against the
General Assembly authorizing, local improvements to be made and
providing for the payment thereof. But whether the work be local or
not; whether the tax shall be levied upon all the property of the State,
or only upon the property supposed to be benefited; whether the policy
of taxing the whole State to build the levees be good or bad; whether
the purpose of the tax be for the public good or not, are all questions
for the legislative discretion, over which courts have no control. In
Cooley's Constitutional Limitations, p. 128, when treating of the lim-

itations on the power of the Legislature to expend money in public improvements, the author says:

"Some of these are prescribed by the constitution, but others spring from the very nature of free government. The latter must depend for their enforcement upon legislative wisdom, discretion and conscience. The legislature is to make laws for the public good and not for the benefit of individuals. It has control of the public moneys and should provide for disbursing them for public purposes. Taxes should only be levied for those purposes which properly constitute a public burden. But what is for the public good, and what are public purposes, and what does constitute a public burden, are questions which the Legislature must decide upon its own judgment, and in respect to which it is vested with a large discretion, which can not be controlled by the courts, except, perhaps, where its action is clearly evasive, and where, under pretense of a lawful authority, it has assumed to exercise one that is unlawful. When the power which it excercises is legislative in its character, the courts can enforce only those limitations which the constitution imposes and not those implied restrictions, which, resting in theory only, the people have been satisfied to leave to the judgment, patriotism and sense of justice of their representatives."

And this is the settled jurisprudence of this State on that subject. In the State v. Volkman this court said: "That the Legislature in its sphere is supreme in all respects, save when restricted by the constitution of the State or the United States." See also State ex rel. Attorney General v. Fagan, 22 An. 350, and case there cited.

If the theory of the plaintiff be correct, that the appropriations for levees and railroads are for private purposes, and not legitimately the subjects for legislation, and therefore, that the debts created for such purposes are unconstitutional—a fortiori, would bonds issued in aid of the property banks in this State be void—and thus, all the bonded debt of the State, created during the last forty years, would be null and void. This may be a pleasant dream for overburdened taxpayers to indulge, but courts, whose duty it is to deal with facts and laws, can not seriously be expected to adopt such vagaries. The question of eminent domain does not arise in this case; no private property has been expropriated by the law in question.

The real question in this suit is, had the General Assembly the power to contract the debt evidenced by those bonds? We have not been cited to any provision of the constitution which forbade it, and if there be none, which we believe is the fact, the debt is valid. We therefore adhere to the decree heretofore made in this case.